[Sac. No. 5231.   In Bank.—March 21, 1939.]

ANDERSON–COTTONWOOD   IRRIGATION   DISTRICT (a Public Corporation), Appellant, v. JOHN KLUK-KERT, as County Assessor, etc., et al., Respondents.

L. C. Smith for Appellant.

Harry W. Horton, Hankins & Hankins, C. F. Metteer, Arvin B. Shaw, Jr., Thomas C. Boone and A. L. Cowell as *Amici Curiae,* on Behalf of Appellant.

Glenn D. Newton for Respondents.

HOUSER, J.—As is indicated by the title of the cause, the plaintiff herein is a corporation known as an irrigation district. In due course of the exercise of its powers and operations as such district, an assessment was levied by it upon the lands that were located within the boundaries of the district. The assessment not having been paid, by reason thereof and in accordance with the provisions of the enabling statute, the lands upon which the assessment had become delinquent were sold to the said district. Thereafter, while such lands were thus apparently owned by the plaintiff, the county assessor of the county in which the lands were situated threatened to include them in a general assessment of taxes for county governmental purposes. Thereupon, the plaintiff instituted a proceeding for the purpose of prohibiting such contemplated action on the part of the said county assessor, as well as the collection by the county tax collector of taxes thus proposed to be assessed. From a judgment that was rendered therein in favor of the defendants, the instant appeal has been presented to this court.

Basically, the merits of the cause are determinable from a consideration of the pertinent provisions that are contained within section 1 of article XIII of the Constitution of this state. Therein, it is provided that " . . . property *used* for free public libraries and free museums, growing crops, property *used* exclusively for public schools, and such *as may belong to* the United States, this state, or to any county, city and county, or municipal corporation within this state shall be exempt from taxation, . . . " (Emphasis added.)

In itself, as far as it may relate to the question here presented, the language there employed would seem to require no construction by the courts, particularly the pertinent provision which relates to the exemption of property *"belonging to"* the state. However, it is urged by respondents that the specific property in question was "non-operative", that is, not in actual use for the purposes for which the irrigation district was organized—and, consequently, that it was not of the class of public property which is or was intended to be relieved from the burden of taxation.

Passing for the moment the question whether the lands here involved were "non-operative" within the meaning con-

tended for by respondents, or whether they are or were used for governmental purposes—in which latter event respondents concede they could not lawfully be taxed—we deem it, expedient to give some consideration to the argument advanced by respondents to the effect that, notwithstanding the plain language of the constitutional provision which exempts from taxation *any* property belonging to the state without limitation as to its "use", nevertheless such property was not intended to be exempted unless it was *in actual use* for a public purpose.

On several different occasions, the appellate courts of this state heretofore have ruled upon that question adversely to respondents' contentions.

In the comparatively early case of *San Francisco* v. *McGovern*, 28 Cal. App. 491 [152 Pac. 980], under the constitutional provision here involved, as it existed prior to 1914, at which time an amendment thereto was adopted, it was held that property acquired by the City and County of San Francisco for the purpose of constructing and maintaining a municipal waterworks for the benefit of the inhabitants of said city and county, and to supply water, light and power to cities outside such municipality, was exempt from taxation under the provisions of article XIII, section 1, California Constitution even though such acquired property was located outside the territorial limits of said city and county. In substance, an identical conclusion was reached by the Supreme Court of this state in the case of *Turlock Irr. Dist.* v. *White*, 186 Cal. 183 [198 Pac. 1060, 17 A. L. R. 72], wherein it was sought to tax lands of an irrigation district which lay outside the corporate boundaries of such district, and wherein the court ruled that all property held or apparently owned by an irrigation district, even though not actually in use by it, in reality "belonged to" the state and was exempt from taxation under the constitutional provision. Also in the case entitled *State Land Settlement Board* v. *Henderson*, 197 Cal. 470 [241 Pac. 560], it was held that "all lands held by the state and open for settlement upon the terms prescribed by the State Land Settlement Act (Stats. 1917, p. 1566) are lands which *belong to* the state and are exempt from taxation" under the constitutional provision. (Emphasis added.)

It is to be noted that in each of those cases the funda-

mental basis for the decision that was made by the court was that, in effect, the property upon which the tax was sought to be levied was *owned by* the state or held by a subordinate agency thereof, and that, in accordance with the constitutional provision, such land was exempt from taxation. (In principle, the cases of *Webster* v. *Board of Regents,* 163 Cal. 705 [126 Pac. 974], and *San Pedro etc. R. R. Co.* v. *Los Angeles,* 167 Cal. 425 [139 Pac. 1071, 52 L. R. A. (N. S.) 991], are to the same effect.)

Also, directly bearing on the question is a note found in 3 A. L. R. 1440, wherein it is said: "Property owned by the state or subordinate municipal bodies is expressly exempted from taxation by constitutional provision or statutory enactment in many jurisdictions, and in some of these jurisdictions it is held that, where the exemption is express and unqualified, no tax can be levied against it regardless of the use to which it is put." (Citing cases from several jurisdictions, including California.) However, in a succeeding note that appears on page 1442 of the same volume it is also said that, "As a general rule, property held by a municipality in connection with property used for a public purpose, but in excess of the amount required for proper conduct of such purpose, and not actually so used, is not within tax exemption provisions exempting property *used for public purposes."* (Citing cases.) (Emphasis added.) The distinction would thus appear to be that in the first list of authorities, the constitutional or other provision with reference to the exemption is general, whereas in the latter the exempted property must be *"used for public purposes".*

Among the several authorities from other jurisdictions which have followed the rule heretofore adhered to in California that where tax exemption provisions are directed solely to the "ownership" of public property, the use to which such property is put becomes immaterial, are the following: *Otter Tail Power Co.* v. *Degnan,* 64 N. D. 413 [252 N. W. 619, 621] ; *City of Harper* v. *Fink,* 148 Kan. 278 [80 Pac. (2d) 1080] ; *Board of Commrs.* v. *City of Wellington,* 66 Kan. 590 [72 Pac. 216, 60 L. R. A. 850] ; *City of Omaha* v. *Douglas County,* 96 Neb. 865 [148 N. W. 938] ; *Stewart* v. *Denver,* 70 Colo. 514 [202 Pac. 1085] ; *City of Springville* v. *Johnson,* 10 Utah, 351 [37 Pac. 577] ; *State* v. *Mayes,* 174 Okl. 286 [51 Pac. (2d) 266, 268] ; *Town of Weaverville* v.

*Hobbs,* 212 N. C. 684 [194 S. E. 860]; and *Grand River Drainage Dist.* v. *Reid,* 341 Mo. 1246 [111 S. W. (2d) 151]; see, also, *Teaneck Tp.* v. *State Board of Tax Appeals,* 110 N. J. L. 28 [164 Atl. 895] (affirmed 111 N. J. L. 242 [168 Atl. 449]).

In the case entitled *State* v. *Mayes,* 174 Okl. 286 [51 Pac. (2d) 266, 268], under the Oklahoma Constitution it was held that lands or property acquired and owned by a city for water right purposes were not liable to taxation by a county or other taxing district, although such lands or property were situated without the limits of such city and in a county other than that in which the city was located, and notwithstanding the fact that the property was used in part for other purposes. In discussing the constitutional exemption, the court said:

"Section 6, art. 10, of the Constitution provides that 'all property of the United States, and of this State, and of counties, and of municipalities of this state . . . shall be exempt from taxation.' To the same effect is subdivision 3 of section 12319, O. S. 1931. There is no mention of the use to which property of a municipality is put as a condition to its being nontaxable. The provisions of the Constitution and the statute are without condition or limitation. . . . It is the general rule that where the Constitution and laws of a state exempt from taxation all property of municipalities within the state, without reference to the use to which the property is put, it is exempt from all taxation regardless of the character of the use thereof. It is so held in *Stewart, County Treas.,* v. *City and County of Denver,* 70 Colo. 514 [202 Pac. 1085]; *Omaha* v. *Douglas County,* 96 Neb. 865 [148 N. W. 938]; *City of Colorado Springs* v. *Board of Com'rs of Fremont County,* 36 Colo. 231 [84 Pac. 1113]; *City of Springville* v. *Johnson,* 10 Utah 351 [37 Pac. 577]; *City and County of San Francisco* v. *McGovern et al.,* 28 Cal. App. 491 [152 Pac. 980]; *Board of Commrs. of Sumner County* v. *City of Wellington,* 66 Kan. 590 [72 Pac. 216, 60 L. R. A. 850, 97 Am. St. Rep. 396]."

In the light of the interpretation placed upon constitutional exemptions similar to the one here under consideration, by the several authorities hereinbefore cited, including the decisions of our own courts, it is manifest that the language of the exemption provision, being free from ambiguity, "has left no room for judicial construction."

In that regard, in the case entitled *San Francisco* v. *McGovern*, 28 Cal. App. 491 [152 Pac. 980], in discussing the exemption provision here in question, the court said, " . . . ' "where a law is plain and unambiguous, whether it is expressed in general or limited terms, the legislature (or framers of a constitution) should be intended to mean what they have plainly expressed, and consequently, no room is left for construction. Possible or even probable meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere." . . . Whenever a constitutional provision is plain and unambiguous, when no two meanings can be placed on the words employed, it is mandatory, and courts are bound to obey it. Such a mandate, whether wise or unwise, whether founded upon good reasons or not, is obligatory, and cannot be construed away by the history of the past, or by any mischief that it may be supposed it was intended to remedy.' (See Cooley on Constitutional Limitations, pp. 89–91; *Maxwell* v. *Dow*, 176 U. S. 581, 602 [44 L. Ed. 597, 20 Sup. Ct. Rep. 448].) We find ourselves unable to discover, from the language employed in the constitution [art. XIII, sec. 1], any reason for interpretation, or ground for entertaining doubt as to its meaning. The language employed in classifying the property declared to be exempt from taxation, it will be noted, limits the exemption as to property *used* for free public libraries and free museums and property *used* for public schools, but the language following is—'and such (property) as may *belong* to the United States, this state, or to any county or municipal corporation within this state shall be exempt from taxation.' The condition here seems only to be that it (the property) shall 'belong' to the United States, etc. Its location or use is not made a condition of its exemption. The word 'belong' is applied alike and with the same force and meaning to the United States, this state, and to counties and municipalities, and it seems to us was employed to denote an unqualified ownership of the property, not an ownership subject to the condition that it was to be used exclusively for governmental purposes. Certainly it was not intended to attach any such condition to property belonging to the United States or this state and how can we give it a different meaning as applied to counties and municipalities?''

And in the late case entitled *Town of Weaverville* v. *Hobbs,* 212 N. C. 684 [194 S. E. 860], wherein it was held that real property which had been deeded to the state by a trustee's deed, for the use and benefit of the World War Veterans Loan Fund and which the state had rented to private persons and had applied the rentals to the fund, was exempt from *ad valorem* taxation by the town wherein the real property was located, the court said: "The Constitution of North Carolina contains this mandatory provision, article V, section 5: 'Property *belonging to* the State, . . . shall be exempt from taxation.' . . . The language of the constitutional provision is so clear and unambiguous that there is no room for judicial construction. The fact that social, economic, and political conditions in this state have undergone great changes since the adoption of our present Constitution, resulting in an enlargement of the functions of municipal corporations to meet the requirements of changed conditions, would not justify a construction of this provision which would in effect result in its amendment by the courts and not by the people." (Emphasis added.) (To the same effect see, also, *City of Springville* v. *Johnson,* 10 Utah, 351 [37 Pac. 577]; *City of Omaha* v. *Douglas County,* 96 Neb. 865 [148 N. W. 938].)

■ Irrespective of that which hereinbefore has been stated with respect to the rule that under a constitutional provision exempting state-owned property from taxation it is immaterial whether the property is held in a proprietary or a governmental capacity, it does not appear that the lands here involved are nonoperative, within the meaning contended for by respondents. In the recent case entitled *El Camino Irr. Dist.* v. *El Camino Land Corp.,* 12 Cal. (2d) 378 [85 Pac. (2d) 123], this court held that an irrigation district was an agency of the state, whose functions were considered exclusively governmental; that it owns no lands in a proprietary sense, its property being owned by the state and held only for governmental purposes. The court pointed out that under section 29 of the Irrigation District Act (Deering's Gen. Laws [1931], Act 3854, p. 1948) it was provided that property acquired by the district should be held "in trust for", and was "dedicated and set apart to the uses and purposes" set forth in the act. (See, also, *Clough* v. *Compton-Delevan Irr. Dist.,* 12 Cal. (2d) 385 [85 Pac. (2d) 126];

*Moody* v. *Provident Irr. Dist.,* 12 Cal. (2d) 389 [85 Pac. (2d) 128].) Also, in the recent case entitled *Provident Land Corp.* v. *Zumwalt,* 12 Cal. (2d) 365 [85 Pac. (2d) 116], where the economic history of irrigation districts in this state was reviewed at some length it was held that lands acquired by the district under the provisions of the Irrigation District Act remain in trust, and that their proceeds, whether by sale or lease, were likewise subject to the trust.

Respondents have placed great reliance upon the case entitled *La Mesa etc. Irr. Dist.* v. *Hornbeck,* 216 Cal. 730 [17 Pac. (2d) 143], in support of their contention that the property here involved was nonoperative and therefore taxable. In that case, for the reason that property so acquired by the district, being for resale, was not impressed with a public trust,—it was held that irrigation districts which acquired property by virtue of delinquent district assessments were not entitled to have canceled liens of county taxes and assessments existing against the property. In the light of the holding of this court in the recently decided cases, to which reference hereinbefore has been had, to wit, *El Camino Irr. Dist.* v. *El Camino Land Corp.,* 12 Cal. (2d) 378 [85 Pac. (2d) 123], *Clough* v. *Compton-Delevan Irr. Dist.,* 12 Cal. (2d) 385 [85 Pac. (2d) 126], *Moody* v. *Provident Irr. Dist.,* 12 Cal. (2d) 389 [85 Pac. (2d) 128], and *Provident Land Corp.* v. *Zumwalt,* 12 Cal. (2d) 365 [85 Pac. (2d) 116], the decision that was rendered in the La Mesa case loses its importance as far as its applicability herein is concerned. Furthermore, in the La Mesa case, the court specifically left open the settlement of the question here presented, holding it unnecessary to reexamine the decisions in the cases entitled *San Francisco* v. *McGovern,* 28 Cal. App. 491 [152 Pac. 980], *Turlock Irr. Dist.* v. *White,* 186 Cal. 183 [198 Pac. 1060, 17 A. L. R. 72], or *State Land Settlement Board* v. *Henderson,* 197 Cal. 470 [241 Pac. 560], and therein declared that none of those cases dealt with the question there under consideration and further observed that, "Whether *nonoperative property* or property held under a mere tax title and not devoted to the public use may be assessed *is not here involved. . . .* when a cause arises where such property of an irrigation district, or other agency, is assessed for general taxes, we can then, if required, treat that specific question." (Emphasis added.)

The fact that the property here involved has been judicially determined to be held or used by the irrigation district for a public purpose, and not in a proprietary sense, should not in any way be deemed to detract from the force of that which has been said hereinbefore with regard to the conclusion we have reached that, under the constitutional provision which makes ownership the sole test of exemption, the use to which the property is put would be immaterial.

The judgment is reversed.

Curtis, J., Seawell, J., Shenk, J., Edmonds, J., Langdon, J., and Waste, C. J., concurred.